[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11700
Non-Argument Calendar

_____

D.C. Docket No. 4:11-cr-00200-WTM-GRS-7

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRYAN GALLOWAY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(January 31, 2013)

Before HULL, MARTIN and JORDAN, Circuit Judges.

PER CURIAM:

Bryan Galloway appeals his 37-month sentence for conspiracy to manufacture, to possess with intent to distribute, and to distribute marijuana in violation of 21 U.S.C. § 846.  Galloway pleaded guilty to this charge stemming from his involvement in an interstate drug ring operating in Georgia, Colorado, New York, and Missouri, and other places.  On appeal, Galloway argues that the district court erred in denying him a minor-role reduction under U.S.S.G. § 3B1.2, and that the district court imposed a substantively unreasonable sentence because it failed to give meaningful consideration to mitigating factors from Galloway's childhood.

## I.

The grand jury returned a 90-count indictment alleging that Galloway and 11 others conspired to manufacture 1000 or more marijuana plants, to possess with intent to distribute, and to distribute 100 or more kilograms of marijuana, in violation of 21 U.S.C. § 846.  Galloway was charged in Count One, conspiracy, and Counts 23, 24, and 25 for using a communication facility (cell phone) on three occasions to commit, cause, and facilitate drug distribution in violation of 21 U.S.C. § 843(b).

Galloway pleaded guilty to the lesser included offense of Count One, conspiracy to manufacture, to possess with intent to distribute, and to distribute 50 or more marijuana plants, in violation of 21 U.S.C. § 846.  Given his prior criminal

2

history, the conspiracy as charged carried a mandatory minimum sentence of 20 years, see 21 U.S.C. § 841(b)(1)(A); the conspiracy of conviction carried a maximum penalty of 20 years and no mandatory minimum, see 21 U.S.C. § 841(b)(1)(C).

According to the Presentence Investigation Report (PSI), Galloway was ensnared by a Drug Enforcement Administration (DEA) investigation of Orestes Ferrer. The DEA in Savannah began investigating Ferrer after being notified by its New York office that he was supplying marijuana to a New York dealer. The DEA discovered that Ferrer was maintaining several grow houses in the Southern District of Georgia. The DEA Denver Division alerted the Savannah Division that Galloway, a Colorado resident, may have had contact with Ferrer. A wiretap investigation revealed that Galloway had a working relationship with Ferrer, and several calls were intercepted between Ferrer and Galloway discussing marijuana sales in December 2010. For instance, on one call Galloway and Ferrer discussed mixing an unacceptable half-pound of marijuana into a larger batch and the fact that Galloway had 10 pounds of suitable marijuana to sell for $3,600 a pound.

The DEA executed a search of Galloway's Colorado residence in July 2011 and discovered 172 marijuana plants in his garages. The Boulder, Colorado sheriff's deputy informed the DEA that he had seen Galloway in possession of

3

approximately two pounds of marijuana one month before the execution of the warrant. Galloway was later arrested.

In statements made by Ferrer after his arrest he described Galloway's role in the conspiracy. Ferrer said that between April and July 2011, Galloway and another co-defendant, Carl Goldberg, had regularly supplied 10- to 20-pound shipments to be divided among co-conspirators and that Galloway was a large-scale grower. Goldberg described Galloway's participation in a drug deal with duffel bags full of marijuana.

Galloway told the probation officer that he had a state license allowing him to grow 140 marijuana plants, admitted that he exceeded the limit, and asserted that he merely intended to give Ferrer the excess. The probation officer found that Galloway had been recommended for a state license in April 2011, but found no proof of a state license, and Galloway provided none.

Based on the wiretap conversations, the search of Galloway's residence, and the observations of the Sheriff's deputy, the probation officer attributed to Galloway possession of 29.65 kilograms of marijuana, which the probation officer described as "an extremely conservative estimate."

Galloway was assigned a base offense level of 18, pursuant to U.S.S.G. § 2D1.1(c)(11), holding him accountable for between 20 and 40 kilograms of marijuana. Galloway received a two-level enhancement for maintaining a premise

4

for manufacturing marijuana pursuant to U.S.S.G § 2D1.1(b)(12). The PSI did not recommend a reduction in offense level based on acceptance of responsibility because Galloway tested positive for cocaine while on pretrial release. Galloway's criminal history was a category II, and at a total offense level of 20, Galloway's sentencing guideline range was 37-46 months.

Galloway objected to the denial of credit for accepting responsibility and the failure of the probation officer to recommend a role reduction. He also sought a downward variance based on his life history, pursuant to § 3553(a). Galloway presented evidence of a very difficult childhood, including parental abuse and neglect with exposure to marijuana at age four and alcohol at age 13. Galloway's troubled history was also detailed in the PSI.

The court adopted substantially all the facts contained in the PSI. The court denied Galloway's requested role reduction, but granted him the "benefit of the doubt" and two points credit for acceptance of responsibility, reducing his base level to 18 and his sentence range to 30-37 months. The court declined a minor role reduction because, speaking of the recorded phone calls, "[i]t wasn't an isolated situation; it was something that went on for a number of months."

The court considered the factors for mitigation under § 3553(a), but responded that "Mr. Galloway is not a boy anymore; he's a grown man," and

5

pointed out a criminal history that included a prior drug distribution conviction.

The court declined to adjust the sentence downward because Galloway

> [has] had more than enough opportunity to rid himself of any substance abuse that may or may not have been caused by the way he was raised.  And his background is no reason for this Court, based upon all these factors, to grant any downward departure or variance in this case.

The court then imposed a top of the guideline sentence of 37 months.

Galloway appeals his sentence in light of the court's failure to give him a minimal role reduction and on the ground that it was substantively unreasonable. We address each claim in turn.

## II.

## A.

"In reviewing a claim under the Sentencing Guidelines, [we review] the district court's findings of fact for clear error and its interpretation of the Guidelines de novo."  United States v. Daniels, 685 F.3d 1237, 1244 (11th Cir. 2012).  The district court's determination of a defendant's role in the offense is a factual question which we review for clear error.  United States v. Rodriguez De Varon, 175 F.3d 930, 936 – 37 (11th Cir. 1999) (en banc).  "[W]e acknowledge that a similar fact pattern may on occasion give rise to two reasonable and different constructions," and for that reason "it will be rare for an appellate court to

conclude that the sentencing court's [relative role] determination is clearly erroneous." Id. at 945.

"The proponent of the downward adjustment . . . always bears the burden of proving a mitigating role in the offense by a preponderance of the evidence." Id. at 939. Section 3B1.2 of the Sentencing Guidelines provides for a reduction of the base offense level by two levels where a defendant was a "minor participant" in criminal activity. U.S.S.G. § 3B1.2. A "minor participant" is one "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n.5).

Our precedent provides:

> In determining whether a 'minor participant' reduction applies, we have said the district court must measure the defendant's role against her relevant conduct, that is, the conduct for which she has been held accountable under U.S.S.G. § 1B1.3. In addition, where the record evidence is sufficient, the district court may also measure the defendant's conduct against that of other participants in the criminal scheme attributed to the defendant.

United States v. Keen, 676 F.3d 981, 997 (11th Cir. 2012) pet. for cert. denied, (U.S. Nov. 5, 2012) (Nos. 12-5595, 12A14) (quotation marks omitted) (emphasis added). The district court need not make any specific findings other than its ultimate determination of the defendant's role in the offense. Rodriguez De Varon, 175 F.3d at 939-40.

7

In conspiracy cases, relevant conduct by which we measure the defendant's role includes acts and omissions: (1) by the defendant; (2) by others in furtherance of jointly undertaken criminal activity, if they are reasonably foreseeable; and (3) that were part of the same course of conduct or common scheme as the offense of conviction.  U.S.S.G. § 1B1.3(a)(1)-(2).  A defendant cannot prove that he played a minor role in the relevant conduct attributed to his offense by pointing to a broader criminal conspiracy for which he was not held accountable.  De Varon, 175 F.3d at 941.

## B.

Galloway argues that the district court erred in declining to impose a minor role reduction because it did not compare his role to those of others in the conspiracy.  Galloway argues that Ferrer's relationships with the other Defendants were ongoing long before Galloway came to be involved and that Galloway knew nothing of the other grow houses and money laundering activities of Ferrer and other co-conspirators.  Based on this, Galloway argues that his conduct was minor compared with others and the court's failure to make such a comparison was a sentencing error.

First, Galloway's claim that other co-conspirators had broader involvement is not a reason to award Galloway a minor role reduction.  Our inquiry is properly focused on Galloway's role as compared to the relevant conduct for which he was

8

held accountable. De Varon, 175 F.3d at 941. Galloway was held accountable for conspiracy connected to distribution of 29.65 kilograms of marijuana, an undisputed amount, said to be, "an extremely conservative estimate." Thus, analogizing to Keen, Galloway's role was "hardly incongruent with the conduct for which [he] was held accountable." 676 F.3d at 997.

Second, Galloway's claim that the district court erred because it did not explicitly compare his role to Ferrer and others conflates what a court must do—compare a defendant's actions to the relevant conduct for which he is held accountable—with what it may do—compare the defendant's actions to the conduct of co-defendants. Id. The district court's failure to make a specific comparison was not error, and Galloway was not entitled to a role reduction simply on account of Ferrer's greater role in the broader criminal scheme.

## III.

### A.

We evaluate the substantive reasonableness of a sentence under the deferential abuse-of-discretion standard. Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007). "[O]rdinarily we would expect a sentence within the Guidelines range to be reasonable." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). Nevertheless, the district court must make an "individualized assessment" in each case. Gall, 552 U.S. at 50, 128 S. Ct. at 597. That being said,

9

"[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal." Id. at 51.

We review the totality of the facts and circumstances to gauge for substantive error. United States v. Irey, 612 F.3d 1160, 1189-90 (11th Cir. 2010) (en banc). The party challenging the sentence has the burden to establish that the sentence is unreasonable. Talley, 431 F.3d at 788. The relevant inquiry is "whether the sentence imposed by the district court fails to achieve the purposes of sentencing as stated in section 3553(a)." Id. The § 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

Id. at 786 (summarizing 18 U.S.C. § 3553(a)). A district court is not required to explicitly explain its findings. United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005). An acknowledgment that the court considered the defendant's arguments and the § 3553(a) factors is adequate. See Talley, 431 F.3d at 786. We may vacate a sentence only "if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences

10

dictated by the facts of the case." United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008) (quotation marks omitted).

### B.

Galloway argues that the district court abused its discretion because it failed to give meaningful consideration to his "quite awful" life history. Galloway notes that other courts have imposed lenient sentences in cases of horrendous childhoods, and argues that the court's statements demonstrate that it failed to properly consider mitigation.

Galloway fails to show that the district court abused its discretion and imposed a substantively unreasonable sentence. The district court explicitly considered and weighed the appropriate sentencing factors, as well as the statements by Galloway regarding his personal life history and circumstances, it simply disagreed with Galloway that they required a lesser sentence. The court was clearly aware and made reference to Galloway's troubled past, but felt that given "all these factors"—including the fact Galloway was forty-three years old and had had many years and opportunities to reform his behavior—he was not deserving of a downward variance. The district court was within its discretion to find that Galloway's personal history did not outweigh his adult participation in a substantial drug-trafficking scheme.

### IV.

11

Finding that the trial court did not plainly err in sentencing and that the sentence was substantively reasonable, Galloway's sentence is

**AFFIRMED**.